UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANIEL NYKIEL and ANNEMARI COOLEY, individually and as the representatives of a class of similarly situated persons, and on behalf of The Smith & Nephew U.S. Savings Plan,<br><br>        Plaintiffs,<br><br>        v.<br><br>SMITH & NEPHEW, INC., BOARD OF DIRECTORS OF SMITH & NEPHEW, INC., US PENSION AND BENEFITS EXECUTIVE COMMITTEE OF SMITH & NEPHEW, INC.,<br><br>        Defendants. | Civil Action No. 1:24-cv-12247-NMG |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

    I.    PLEADINGS ...................................................................................................... 2

    II.    SETTLEMENT NEGOTIATIONS...……………………………………………......2

    III.    OVERVIEW OF SETTLEMENT TERMS ................................................................ 4

        A.    The Settlement Class ............................................................................. 4

        B.    Monetary Relief ..................................................................................... 4

        C.    Release of Claims .................................................................................. 5

        D.    Class Notice and Settlement Administration ......................................... 7

        E.    Attorneys' Fees and Administrative Expenses ...................................... 7

        F.    Review by Independent Fiduciary .......................................................... 7

ARGUMENT .................................................................................................................. 7

    I.    STANDARD OF REVIEW ................................................................................... 7

    II.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL TO THE SETTLEMENT .................... 8

        A.    The Settlement Is The Product Of Arm's-Length Negotiations ..................... 8

        B.    The Settlement Was Reached After Informed Negotiations .......................... 9

        C.    The Proponents Of The Settlement Are Highly Experienced In Similar ERISA Litigation ...................................................................................... 11

        D.    The Settlement is Fair, Reasonable, and Adequate to Warrant Sending Notice to the Settlement Class .................................................................. 12

    III.    THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ................. 13

        A.    The Proposed Settlement Class Satisfies Rule 23(a) .................................. 13

        B.    The Proposed Class Satisfies Rule 23(b)(1) ............................................. 17

CONCLUSION ............................................................................................................. 19

CERTIFICATE OF SERVICE ........................................................................................ 21

## TABLE OF AUTHORITIES

Cases

*Abbott v. Lockheed Martin Corp.,*
    2015 WL 4398475 (S.D. Ill. July 17, 2015)...............................................................10

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)..............................................................................................13, 15

*Andrews v. Bechtel Power Corp.,*
    780 F. 2d 124 (1st Cir. 1985) ....................................................................................15

*Beach v. JPMorgan Chase Bank, Nat'l Ass'n,*
    No. 17-cv-00563, Dkt. 211 (May 20, 2020),
    *approved* 2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) .....................................................8

*Beesley v. Int'l Paper Co.,*
    No. 3:06-cv-00703, Dkt. 559 (S.D. Ill. Jan. 31, 2014) ................................................10

*City P'ship. v. Atlantic Acquisition Ltd.,*
    100 F.3d 1041  (1st Cir. 1996) .....................................................................................8

*Dolins v. Cont'l Cas. Co.,*
    No. 1:16-cv-08898, Dkt. 122-1 (N.D. Ill. Aug. 6, 2018) ..............................................9

*Eisen v. Carlisle and Jacquelin,*
    417 U.S. 156 (1974)...................................................................................................11

*George v. Kraft Foods Global, Inc.,*
    270 F.R.D. 355 (N.D. Ill. 2010)..................................................................................15

*Gordon v. Johnson,*
    300 F.R.D. 31 (D. Mass. 2014) ...................................................................................13

*Hochstadt v. Boston Sci. Corp.,*
    708 F. Supp. 2d 95 (D. Mass. 2010)..................................................................7, 13, 18

*In re Credit Suisse-AOL Secs. Litig.,*
    253 F.R.D. 17 (D. Mass. 2008) ...................................................................................14

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.,*
    275 F.R.D. 382 (D. Mass 2011) ..................................................................................13

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
    55 F.3d 768 (3d Cir. 1995) ...........................................................................................8

*In re IKON Office Solutions*,
    191 F.R.D. 457 (E.D. Pa. 2000)................................................................................17

*In re Lupron Mktg. and Sales Practices Litig.*,
    345 F. Supp. 2d 135 (D. Mass. 2004)..........................................................................8

*In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*,
    270 F.R.D. 45 (D. Mass. 2010)....................................................................................7

*In re Neurontin Mktg. & Sale Practices Litig.*,
    244 F.R.D. 89(D. Mass. 2007)...................................................................................14

*In re Rite Aid Corp. Sec. Litig.*,
    146 F. Supp. 2d 706 (E.D. Pa. 2001)...........................................................................8

*In re Schering Plough ERISA Litigation*,
    589 F.3d 585 (3d Cir. 2009)............................................................................... 14, 17

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*,
    2018 WL 2183253  (N.D. Cal. May 11, 2018) ............................................................8

*Karpik v. Huntington Bancshares Inc.*,
    2021 WL 757123 (S.D. Ohio Feb. 18, 2021) ..............................................................9

*Kinder v. Koch Indus., Inc.*,
    2021 WL 3360130  (N.D. Ga. July 30, 2021) .............................................................9

*Koerner v. Copenhaver*,
    2014 WL 5544051 (C.D. Ill. Nov. 3, 2014) ..............................................................10

*LaRue v. DeWolff, Boberg & Assoc., Inc.*,
    552 U.S. 248 (2008)....................................................................................................18

*Matamoros v. Starbucks Corp.*,
    699 F.3d 129 (1st Cir. 2012) ......................................................................................15

*Mullane v. Central Hanover Bank and Trust Co.*,
    339 U.S. 306 (1950)....................................................................................................11

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)....................................................................................................17

*Payne v. Goodyear Tire & Rubber Co.*,
    216 F.R.D. 21 (D. Mass. 2003)..................................................................................13

*Reid v. Donelan*,
    297 F.R.D. 185 (D. Mass. 2014) ...............................................................................13

*Rozo v. Principal Life Ins. Co.*,
    2021 WL 1837539 (S.D. Iowa Apr. 8, 2021) ...................................................9

*Sacerdote v. New York Univ.*,
    328 F. Supp. 3d 273 (S.D.N.Y. 2018), *aff'd*, 9 F.4th 95 (2d Cir. 2021) ............9

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ...................................................10

*Seiden v. Nicholson*,
    72 F.R.D. 201 (N.D. Ill. 1976)...................................................10

*Soulek v. Costco Wholesale Corp. et al.*,
    Case No. 20-C-937, Dkt. 52  (E.D. Wis. Mar. 17, 2022) .......................10, 16

*Spano v. Boeing Co.*,
    2016 WL 3791123 (N.D. Ill. Mar. 31, 2016).......................................10

*Surowitz v. Hilton Hotels Corp.*,
    383 U.S. 363 (1966)...................................................15

*Toomey v. Demoulas Super Markets, Inc.*,
    No. 1:19-cv-11633, Dkt. 95 (Mar. 24, 2021), *approved* Dkt. 100 (D. Mass. Apr. 7, 2021).................8

*Tracey v. M.I.T.*,
    No. 16-11620, Doc. 157 (D. Mass. Oct. 19, 2018) ...................................17

*Walmart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...................................................12, 13

*Weeks v. JetDirect Aviation, Inc.*,
    No. 09-10527, 2010 U.S. Dist. LEXIS 111037 (D. Mass. Oct. 19, 2010) ..............17

*Wildman v. Am. Century Servs., LLC*,
    362 F. Supp. 3d 685 (W.D. Mo. 2019)...................................................9

Statutes

29 U.S.C. § 1132(a)(2)...................................................14, 17
29 U.S.C. §1109(a) ...................................................18

Other Authorities

Manual for Complex Litigation (Fourth), §13.14 (2004) .............................7
Manual for Complex Litigation (Fourth), §21.632 (2004)............................7

## Rules

Fed. R. Civ. P. Rule 23(a) .................................................................................... passim
Fed. R. Civ. P. Rule 23(b)(1) .............................................................................. passim
Fed. R. Civ. P.  23(e)(1) ...........................................................................................11
Fed. R. Civ. P.  23(g) ...............................................................................................16

## Treatises

1 William B. Rubenstein, Newberg on Class Actions § 3:58 (5th ed. 2012) .......................................15
Restatement (Third) of Trusts, § 100 cmt. (b)(1) .............................................................9

## Regulations

Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830 ... 7

# INTRODUCTION

Plaintiffs Daniel Nykiel and Annemari Cooley's (collectively, "Plaintiffs") seek preliminary Court approval of a settlement resolving their class action claims against Defendants Smith & Nephew, Inc. ("Smith & Nephew" or "the Company"), the Board of Directors of Smith & Nephew, Inc., (the "Board"), and the US Pension and Benefits Executive Committee of Smith & Nephew, Inc. (the "Committee" and, collectively with the Board and the Company, "Defendants"), relating to the management of The Smith & Nephew U.S. Savings Plan ("Smith & Nephew Plan" or "Plan").[1]

Under the terms of the proposed Settlement, a Gross Settlement Amount of $350,000.00 will be paid to resolve the claims of Settlement Class Members who participated in the Plan during the Class Period. Additionally, Smith & Nephew also agreed to direct the Smith & Nephew Plan's fiduciaries to conduct a request for proposal ("RFP") related to the MA services offered under the Plan on or before December 31, 2027, with that RFP to be conducted in the manner and at the time chosen by the Plan's fiduciaries in their sole discretion, and all costs of the Independent Fiduciary will be paid by Smith & Nephew independent from the Qualified Settlement Fund. This is a significant recovery for the Class in relation to the remaining claims that were alleged and falls well within the range of negotiated settlements in similar ERISA cases.

For the reasons set forth below, the Settlement is fair, reasonable, and adequate, and merits preliminary approval so that notices may be disseminated to the class. Among other things:

- The Settlement was negotiated at arm's length over numerous months with exchange of limited discovery;
- The Settlement provides for significant monetary and non-monetary relief that is on par

---

[1] A copy of the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") is attached as **Exhibit A** to the accompanying Declaration of Paul M. Secunda ("Secunda Decl.").

with other settlements;

- The Plan of Allocation conveniently provides for automatic distribution of the settlement proceeds to the accounts of class members;[2]

- The Released Claims are tailored to the claims that were asserted, or could have been asserted, in the action;

- The proposed Settlement Class is consistent with the requirements of Rule 23;

- The proposed Settlement Notice provides substantial information to Class Members about the Settlement; and

- The Settlement provides Class Members the opportunity to raise any objections they may have to the Settlement and to appear at the final approval hearing.

Accordingly, Plaintiffs respectfully request that the Court enter an order that: (1) preliminarily approves the Parties' Class Action Settlement Agreement in the above-referenced matter; (2) approves the proposed Settlement Notice and authorizes distribution of the Notice to the Settlement Class; (3) preliminarily certifies the Settlement Class for settlement purposes only; (4) schedules a final approval hearing; (5) approves the CAFA letter; (6) preliminary approves the Plan of Allocation; and (7) enters the accompanying Preliminary Approval Order. Defendants do not oppose the relief requested by Plaintiffs' Motion for Preliminary Approval of Settlement, including Plaintiffs' request to certify the Settlement Class as a mandatory, non-opt-out class under Fed. R. Civ. P. 23(b)(1) for settlement purposes only.

## **BACKGROUND**

### I.    PLEADINGS

Plaintiffs Daniel Nykiel and Annemari Cooley ("Plaintiffs") filed this action on August 30, 2024. Dkt. 1. The operative complaint is the Amended Complaint, which was filed on November

---

[2] The Settlement Class is defined as "[a]ll persons who were participants in or beneficiaries of the Smith & Nephew US Savings Plan at any time between August 30, 2018, and the date upon which the Preliminary Approval Order is entered." Settlement Agreement, ¶ E.

22, 2024. Dkt. 28. In their Amended Complaint, Plaintiffs alleged that Defendants: (a) improperly utilized forfeited Plan assets to defray unreasonable Plan RKA expenses and to reduce future employer contributions for their own selfish interests; (b) paid unreasonable compensation for the Plan's Personalized Planning & Advice ("PPA") MA service; and (c) failed to monitor the Plan Committee with regard to the excessive Plan MA services. *Id.*, ¶5.

Defendants filed a motion to dismiss the Amended Complaint on January 13, 2025. Dkt. 35. After full briefing of that motion, the Court referred the motion to Magistrate Boal who held oral argument on the motion on July 10, 2025. Dkt. 58. On July 11, 2025, the Court made a report and recommendation that the motion be granted in part and denied in part, dismissing Plaintiffs' claims involving forfeitures, but allowing the managed account claims to move into discovery. Dkt. 59. After reviewing the Parties' objections, the Court adopted that report and recommendation on August 13, 2025. Dk. 66.

## II.    SETTLEMENT NEGOTIATIONS

The Parties then began the process of engaging in settlement negotiations, exchanged proposals and limited discovery, over an almost four-month period, during which Defendants' received extensions to answer the Amended Complaint through December 5, 2025. Dkt. 73; *Declaration of Paul M. Secunda in Support of Motion for Preliminary Approval of Class Action Settlement* ("Secunda Decl."), ¶¶ 12-13. Before Defendants answered, the Parties reached a settlement-in-principle of Plaintiffs' claims, and agreed to seek a stay of litigation while that settlement-in-principle was finalized and so that the Parties could present their motion for preliminary approval of the settlement to the Court. Dkt 74.   The Court granted the Parties' requested stay on December 8, 2025, ordering the Parties to file a status report by January 31, 2026. Dkt. 75. The Parties alerted the Court on January 23, 2026, that they needed additional time

to finalize the settlement and present their motion for preliminary approval of the settlement, and the Court subsequently granted the Parties time until February 28, 2026 to submit that motion. Dkts. 77,  78, 79.

### III.    OVERVIEW OF SETTLEMENT TERMS

#### A.    The Settlement Class

The Settlement Agreement applies to the following Settlement Class:

> All persons who were participants in or beneficiaries of the Smith & Nephew US Savings Plan at any time between August 30, 2018, and the date upon which the Preliminary Approval Order is entered.

Settlement, ¶ E.  In turn, the "Class Period" is defined as August 30, 2018 through the date upon which the Preliminary Approval of this Settlement by this Court is entered. Settlement, ¶ F. There are approximately 29,000 Settlement Class Members based on the administrative records of the Plan.

#### B.    Monetary Relief

Under the terms of the proposed Settlement, a Gross Settlement Amount of $350,000.00 thousand dollars will be paid to resolve the claims that were asserted in the Action. Settlement ¶ 1(t). Based on Plaintiffs' estimates, the Gross Settlement Amount represents 18.4% of the total amount demanded ($1.9 million) for excessive managed account (MA) fees. Smith & Nephew also agreed to direct the Smith & Nephew Plan's fiduciaries to conduct a request for proposal ("RFP") related to the MA services offered under the Plan on or before December 31, 2027, with that RFP to be conducted in the manner and at the time chosen by the Plan's fiduciaries in their sole discretion. Finally, under the terms of the proposed Settlement, all costs of the Independent Fiduciary will be paid by Smith & Nephew independent from the Qualified Settlement Fund. After accounting for (a) Administrative Expenses; (b) reimbursement of expenses incurred by Class Counsel that are awarded by the Court; (c) attorneys' fees to Class

Counsel that are awarded by the Court; (d) Case Contribution Award that are awarded by the Court, and (e) a contingency reserve to be set aside by the Settlement Administrator, the Net Settlement Amount will be distributed to eligible Class Members. Settlement, ¶¶ 35-40.

The Plan of Allocation is attached as Exhibit 2 to the Settlement Agreement, and sets out the methodology for allocating and distributing the Net Settlement Amount. *Id.*, Ex. 2. It is submitted to the Court for approval in connection with this Preliminary Approval of the Settlement. Class Counsel will retain the Settlement Administrator, Analytics Consulting, LLC, to calculate the amounts payable to Settlement Class Members. *Id.*, ¶¶ 36-37. Under the Settlement Agreement, "after the distribution of the Net Settlement Amount and allocation of the Net Settlement Amount pursuant to the Plan of Allocation, amounts allocable to Class Members who cannot be located or otherwise cannot receive their Settlement payment shall revert to the Qualified Settlement Fund for distribution consistent with the Plan of Allocation." *Id.*, ¶ 42.

### C.    Release of Claims

In exchange for the foregoing relief, the Settlement Class will release Defendants and affiliated persons and entities (the "Released Parties" as defined in the Settlement) from the following "Released Claims" as set forth in the Settlement Agreement:

> "Released Claims" means any and all past, present, and future actual or potential claims (including but not limited to claims for any and all losses, damages, unjust enrichment, attorneys' fees, disgorgement, litigation costs, injunction, declaration, contribution, indemnification or any other type of or nature of legal or equitable relief), actions, demands, rights, obligations, liabilities, expenses, costs, and causes of action, accrued or not, whether arising under federal, state, or local law, whether by statute, contract, common law, or equity, whether brought in individual or representative capacity, whether accrued or not, whether known or unknown, suspected or unsuspected, foreseen or unforeseen based in whole or in part on acts or failures to act during the Class Period:
>
> > a.  That were or could have been asserted in the Action, or that arise out of, relate to, or are based on any of the allegations, acts, omissions, facts, matters, documents, transactions, or occurrences that were alleged, asserted, referenced, or set forth in the Complaint; or

b. That arise out of, relate in any way to, or are based on, or have any connection with the administration of the Plan and ERISA's fiduciary responsibilities related to the Plan, including but not limited to: (i) the selection, oversight, retention, monitoring, compensation, fees, or performance of the Plan's investment options; (ii) disclosures or failure to disclose information regarding the Plan's investment options; (iii) payments to or costs of managed account services, recordkeeping, or other fees and expenses of the Plan's service providers other administrative costs; (iv) causing the Plan to pay excessive direct or indirect fees, compensation, excessive float compensation, and/or excessive revenue sharing compensation; (v) use of Plan forfeitures; (vi) any conduct related to fiduciary involvement with the Plan's forfeiture account and/or the use of Plan proceeds from the forfeiture account for allegedly improper purposes that purportedly do not serve the best interests of Plan participants; (vii) the management, oversight or administration of the Plan; (viii) the conduct of the Plan's fiduciaries with respect to any aspect of management, oversight, or administration of the Plan; and/or (ix) any alleged breach of the duty of loyalty, care, prudence, diversification, or any other fiduciary duties, or prohibited transactions or self-dealing, under ERISA with respect to the foregoing.

c. "Released Claims" includes any and all claims that would be barred by *res judicata* based on entry of the Final Approval Order.

d. For the Plaintiffs, but not for other Class Members or the Plan, "Released Claims" includes any and all claims Plaintiffs may have against any Released Party, of any nature whatsoever, provided that such claims may be validly released and waived under the law, up to and including the date the Court enters the Preliminary Approval Order.

e. Plaintiffs, Class Members, and the Plan knowingly and expressly waive and relinquish, to the fullest extent permitted by law, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which provides that "A general release does not extend to the claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party," and any similar state, federal or other law, rule or regulation or principle of common law of any domestic governmental entity.

f. "Released Claims" does not include any individual or single-plaintiff claims for benefits that the Class Representatives or the Settlement Class have as to the value of their respective vested account balances under the terms of the Plan and according to the Plan's records as of the date the Settlement becomes Final where such claims arise solely under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and solely to the extent such claims do not relate to the Released Claims described herein.

6

*Id.*, ¶ 1(gg).

### D.    Class Notice and Settlement Administration

Class Members will receive notice of the settlement by first class mail. Settlement Agreement., ¶ 34 & Ex 4. To the extent that Class Members would like more information, the Settlement Administrator[3] will establish a Settlement Website on which it will post the Settlement Agreement, Settlement Notice, and relevant case documents, including the Amended Complaint and a copy of all Court orders related to the Settlement. Settlement ¶ 54 & Ex. 4. The Settlement Administrator also will establish a toll-free telephone line that will provide the option of speaking with a live operator if callers have questions. *Id.*

### E.    Attorneys' Fees and Administrative Expenses

The Settlement requires Class Counsel to file a motion for an award of Attorneys' Fees and Costs at least forty-five (45) calendar days before the Fairness Hearing. *Id.*, ¶ 31. Under the Settlement, a case contribution award up to $10,000 may be awarded to each of the Class Representatives for their contributions in bringing and litigating the action *Id.,* ¶ 32.

### F.    Review by Independent Fiduciary

As required under ERISA, Defendants will retain an Independent Fiduciary to review and authorize the Settlement on behalf of the Plan. *Id.,* ¶ 28; Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830.

## <u>ARGUMENT</u>

### I.    STANDARD OF REVIEW

The approval of a settlement agreement is a two-step process." *Hochstadt v. Boston Sci. Corp.*, 708 F. Supp. 2d 95, 97 n.1 (D. Mass. 2010). In the first step, "the judge reviews the proposal

---

[3] Analytics Consulting, LLC, has been selected as the Settlement Administrator, and has extensive experience administering similar ERISA class action settlements. Secunda Decl. ¶ 32 & Ex. B.

preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing." *Id.* at 106–7 (quoting Manual for Complex Litigation (Fourth), §13.14 (2004)). Therefore, a court first makes a "'preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms.'" *Id.* at 107 (quoting Manual for Complex Litigation (Fourth), §21.632 (2004)). In making a preliminary determination, courts "examine the proposed settlement for obvious deficiencies before determining whether it is in the range of fair, reasonable, and adequate." *In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*, 270 F.R.D. 45, 62 (D. Mass. 2010). A presumption of fairness attaches when "'(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *Hochstadt*, 708 F. Supp. 2d at 107 (citing *In re Lupron Mktg. and Sales Practices Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)). Each of those factors is satisfied.

## II.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL TO THE SETTLEMENT

### A.    The Settlement Is The Product Of Arm's-Length Negotiations

There is an initial presumption that a proposed class action settlement is fair and reasonable when it is the result of arm's-length negotiations. *City P'ship. v. Atlantic Acquisition Ltd.*, 100 F.3d 1041, 1043 (1st Cir. 1996). The Settlement is the result of arm's-length negotiations between counsel for all parties in this action, which included four months of settlement negotiations, with multiple exchanges of settlement proposals and limited discovery. *See* Secunda Decl., ¶¶ 12-13.

The product of these serious and informed negotiations is a Settlement that provides significant benefits to the Class. The negotiated monetary relief represents a significant portion of the losses demanded by Plaintiffs during settlement negotiations. Based on Plaintiffs' estimates,

the Gross Settlement Amount represents 18.4% of the total amount demanded ($1.9 million) for managed account (MA) fees that were alleged to be excessive. *Id.*, ¶ 4. This percentage recovery is on par with, or better than, numerous other ERISA class action settlements that have been approved across the country.[4]

Consistent with numerous other ERISA settlements that have received court approval,[5] the parties have set out a Plan of Allocation in Exhibit 2 to the Settlement Agreement, which is both fair and equitable, and designed to address Plaintiffs' allegations the Plan participants paid excessive fees for MA services. *Id.* This method of distribution is both effective and efficient. *Id.* Under no circumstances will any such payments revert to the Company or any other Defendant, and uncashed checks will be paid to the Plan for the purpose of defraying future administrative fees and expenses of the Plan and its participants. *Id.*, ¶ 42.

## B.    The Settlement Was Reached After Informed Negotiations

Based on the parties' understanding of the claims in the case after substantial investigation, Secunda Decl., ¶ 11, the Parties, fully informed as to the value of the claims and the cost of further litigation, engaged in settlement discussions over a four moth period. *Id.*, ¶¶ 12-13. As a result of

---

[4] *See, e.g.*, *Toomey v. Demoulas Super Markets, Inc.*, No. 1:19-cv-11633, Dkt. 95 at 10 (Mar. 24, 2021), *approved* Dkt. 100 (D. Mass. Apr. 7, 2021) (approving settlement that represented approximately 15–20% of alleged losses); *Beach v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 17-cv-00563, Dkt. 211 (May 20, 2020), *approved* 2020 WL 6114545, at *1 (S.D.N.Y. Oct. 7, 2020) (16% of alleged losses); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 2018 WL 2183253, at *6–7 (N.D. Cal. May 11, 2018) (approximately 10% of losses under Plaintiffs' highest model); *see also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses").

[5] *See, e.g.*, *Kinder v. Koch Indus., Inc.*, 2021 WL 3360130, at *1–2 (N.D. Ga. July 30, 2021); *Karpik v. Huntington Bancshares Inc.*, 2021 WL 757123, at *2 (S.D. Ohio Feb. 18, 2021); *Dolins v. Cont'l Cas. Co.*, No. 1:16-cv-08898, Dkt. 122-1 § 9 (N.D. Ill. Aug. 6, 2018).

these arms-length settlement negotiations, the Parties were able to reach an agreement to resolve all the remaining claims in this case.

In the absence of a settlement, Plaintiffs would have faced potential risks. At the time of settlement, there was a risk that the Court might have dismissed the claims on a motion for summary judgment. If the case proceeded to trial, the Defendants still might have prevailed.[6] Finally, even if Plaintiff prevailed on liability, issues regarding Plaintiffs' claimed loss would have remained. *See* Restatement (Third) of Trusts, § 100 cmt. (b)(1) (determination of losses in breach of fiduciary duty cases is "difficult").

At a minimum, continuing the litigation would have resulted in complex and costly proceedings, and significantly delayed any relief to the Class. ERISA cases such as this can extend up to a decade before final resolution, sometimes going through multiple appeals.[7] The duration of these cases is, in part, a function of their complexity, which further weighs in favor of the Settlement. *See Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *2 (S.D. Ill. July 17, 2015) (noting that ERISA cases such as this are "particularly complex"); *Koerner v. Copenhaver*, 2014 WL 5544051, at *4 (C.D. Ill. Nov. 3, 2014) ("The facts giving rise to Plaintiffs' claims are complicated, require the elucidation of experts, and are far from certain.").

None of this is to say that Plaintiffs lacked confidence in their claims. However, given the risks and costs of litigation, it was reasonable for Plaintiffs to reach a settlement on these terms.

---

[6] *See, e.g.*, *Rozo v. Principal Life Ins. Co.*, 2021 WL 1837539 (S.D. Iowa Apr. 8, 2021); *Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273 (S.D.N.Y. 2018), *aff'd*, 9 F.4th 95 (2d Cir. 2021); *Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685 (W.D. Mo. 2019).

[7] *See, e.g.*, *Spano v. Boeing Co.*, 2016 WL 3791123, at *1, 4 (N.D. Ill. Mar. 31, 2016) (9 years); *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *1 (S.D. Ill. July 17, 2015) (8.5 years); *Beesley v. Int'l Paper Co.*, No. 3:06-cv-00703, Dkt. 559 (S.D. Ill. Jan. 31, 2014) (more than 7 years).

*See Schulte*, 805 F. Supp. 2d at 582–83; *accord Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of money, time, and effort.").

### C.    The Proponents of the Settlement are Highly Experienced in Similar ERISA Litigation

The record reflects that the Class is adequately represented. Class Counsel are experienced ERISA litigators with a proven track record. Secunda Decl. ¶¶ 14–29. Walcheske & Luzi, LLC ("Walcheske & Luzi"), lead Class Counsel, is a firm recognized for being "experienced in complex [ERISA] litigation," and having the ability and resources to vigorously prosecute [an] action." *See Soulek v. Costco Wholesale Corp. et al.*, Case No. 20-C-937, Dkt. 52 at 4 (E.D. Wis. Mar. 17, 2022). Attorney Feigenbaum, for his part, is a well-known litigator of complex ERISA litigation over multiple decades and provided Walcheske & Luzi with timely and wise counsel during litigation. Secunda Decl., ¶¶ 30-31. The Class Representatives are also adequate class representatives, who have diligently pursued this action on behalf of the Class after acknowledging their duties as class representatives. *See Declaration of Daniel Nykiel in Support of Preliminary Approval of the Settlement* ("Nykiel Decl."), ¶¶ 2–4; *Declaration of Annemari Cooley in Support of Preliminary Approval of the Settlement* ("Cooley Decl."), ¶¶ 2–4.

It is Class Counsel's opinion that the Settlement is fair and reasonable. Secunda Decl. ¶ 10. As set forth above, the Settlement provides monetary relief in the Gross Amount of $350,000.00, which, after paying fees and expenses, will automatically be paid to current and former participants of the Plan during the Class Period without the need for filing a claim. Additionally, meaningful non-monetary and monetary relief also was provided in the form of a managed account RFP by the end of 2027 and in the form of Defendants' paying for the services of the independent fiduciary (usually around $15,000).

**D.  The Settlement is Fair, Reasonable, and Adequate to Warrant Sending Notice to the Settlement Class**

Due process and Rule 23(e) do not require that each Class Member receive notice but do require that class notice be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950). "Individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175 (1974).

The proposed forms and methods of notice, which is by first-class mail (Settlement, ¶ 34 and Ex. 4), satisfy all due process considerations and meet the requirements of Rule 23(e)(1) because such notice is reasonably calculated to effect actual notice to the Settlement Class which consists of current and former Plan participants. The parties' proposed notice is attached as Exhibit 4 to the Settlement Agreement. The proposed notice, both together and individually, will fully apprise class members of the existence of the lawsuit, the proposed Settlement, and the information they need to make informed decisions about their rights, including: (i) the terms and operation of the Settlement; (ii) the nature and extent of the release; (iii) the maximum attorneys' fees and costs that will be sought; (iv) the procedure and timing for objecting to the Settlement; (v) the date and place of the fairness hearing; and (vi) the website on which the full Settlement documents and any modifications thereto will be posted. Settlement Agreement. *See id.*

The notice plan will be implemented in a cost-conscious fashion given the monetary amount of the Settlement. Where available, notice will be distributed to current participant class members via the email address previously provided by them to the Plan recordkeeper for purposes of receiving communications regarding the Plan. For those class members for whom email is unavailable, notice will be sent via first-class mail. Both the email notice and mailed notice will

provide key information to participants regarding the settlement, fairness hearing, and objection deadline, and will refer class members to the settlement website, which will contain the settlement notice and former participant claim form. This notice will be delivered shortly after entry of the order preliminarily approving the Settlement. Thus, the forms of notice and proposed procedures for notice satisfy the requirements of due process and the Court should approve the notice plan as adequate.

## III.    THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

Finally, this Court should certify the Settlement Class for settlement purposes. Under Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs move for certification under Rule 23(b)(1) of the following settlement class and appointment of Walcheske & Luzi, LLC ("Walcheske & Luzi"), and Jonathan Feigenbaum, as Class Counsel:

> All persons who were participants in or beneficiaries of the Smith & Nephew US Savings Plan at any time between August 30, 2018, and the date upon which the Preliminary Approval Order is entered.

Settlement, ¶ E.  In turn, the "Class Period" is defined as August 30, 2018 through the date upon which the Preliminary Approval of this Settlement by this Court is entered. Settlement, ¶ F. There are approximately 9,000 Settlement Class Members based on the Smith & Nephew Plan's 2024 5500 Form.

To certify the Settlement Class, the Court must find that it satisfies each requirement of Rule 23(a) and at least one subpart of Rule 23(b). *Walmart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). The standard for certifying a class for settlement purposes is more lenient than that applied in certifying a class for trial, as the Court need not inquire whether the class would be manageable for trial purposes. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

### A.    The Proposed Settlement Class Satisfies Rule 23(a)

Rule 23(a) provides four prerequisites to class certification:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

    1)     the class is so numerous that joinder of all members is impracticable;

    2)     there are questions of law or fact common to the class;

    3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

    4)     the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Plaintiffs satisfy each prerequisite for the following reasons.

(1) <u>Numerosity</u>

The proposed class "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This is a "low threshold" that is generally met if the number of class members "exceeds 40." *Gordon v. Johnson*, 300 F.R.D. 31, 35 (D. Mass. 2014) ("Although no specific, numerical threshold exists, a class of forty or more is generally sufficient in the First Circuit."); *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 275 F.R.D. 382, 388 (D. Mass 2011). A class of 9,000 individuals "would obviously satisfy the numerosity threshold." *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 25 (D. Mass. 2003). Here, the class includes over 9,000 members, Secunda Decl., ¶ 3, and so, numerosity is met.

(2) <u>Commonality</u>

The commonality requirement is met when there is at least "a single common question" to the class. *Reid v. Donelan*, 297 F.R.D. 185, 189 (D. Mass. 2014) (quoting *Dukes*, 564 U.S. at 359). It is "not a difficult one to meet." *Hochstadt*, 708 F. Supp. 2d at 102. Due to the nature of ERISA fiduciary breach claims, "commonality is quite likely to be satisfied." *In re Schering Plough ERISA Litigation*, 589 F.3d 585, 599 n.11 (3d Cir. 2009). Plaintiffs have identified common questions of

14

law and fact that can or would be resolved as to the Plan, not as to any individual participant. Dkt. 28, ¶ 199. In this instance, common questions exist pertaining to whether Defendants breached their fiduciary duties to the Plan by causing the Plan to pay excessive managed account fees; and whether the Plan suffered losses from the alleged fiduciary breaches. Accordingly, commonality is satisfied.

### (3) Typicality

Rule 23(a)(3) requires the claims of the class representatives to be typical of the claims of the class. "The representative plaintiff satisfies the typicality requirement when its injuries arise from the same events or course of conduct as do the injuries of the class and when plaintiff's claims and those of the class are based on the same legal theory." *In re Credit Suisse-AOL Secs. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008). Typicality does not require "identical claims." *In re Neurontin Mktg. & Sale Practices Litig.*, 244 F.R.D. 89, 106 (D. Mass. 2007).

In this case, the Named Plaintiffs asserted an identical legal theory on behalf of the Plan under § 1132(a)(2), which arises from the same course of Plan-level conduct: Defendants' alleged imprudent process for selecting and monitoring the Plan's managed account fees during the Settlement Class Period. If Defendants acted imprudently, they breached their duty to the Plan as a whole, and hence, to all participants. In other words, Plaintiffs allege that all participants during the Class Period were harmed or exposed to harm by the alleged breaches of duty, by being subjected to the same excessive managed account fees. Each class member, Plaintiffs posit, would have to rely on the same evidence to establish Defendants' liability.

### (4) Adequacy of Representation

Rule 23(a)(4) requires the Court to determine that the Class Representatives and their attorneys will adequately represent the class. Fed. R. Civ. P. 23(a)(4). "The moving party must

show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Andrews v. Bechtel Power Corp.*, 780 F. 2d 124, 130 (1st Cir. 1985). Plaintiffs Daniel Nykiel and Annemari Cooley (the "Class Representatives") and their attorneys, Walcheske & Luzi and Jonathan Feigenbaum, satisfy both elements.

a.    <u>Named Plaintiffs are adequate class representatives.</u>

The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. "Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012) (quoting 1 William B. Rubenstein, Newberg on Class Actions § 3:58 (5th ed. 2012)). The interests of the Class Representatives are not antagonistic to any class member. Since the damages and remedies pertaining to the claims in this case all go to the Plan, the Class Representatives have the same interest as any of the other proposed settlement-class members: that is, recovering purported losses for the Plan. Accordingly, no conflict exists between the class representative and the absent class members.

An adequate class representative need only have a basic understanding of the claims and a willingness to participate in the case. *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966); *George v. Kraft Foods Global, Inc.*, 270 F.R.D. 355, 369 (N.D. Ill. 2010). The Class Representatives here more than meet this minimum standard. The Class Representatives understand that they are attempting to recover the losses caused by Defendants' alleged unlawful mismanagement of the Plan. Nykiel Decl., ¶¶ 2-4; Cooley Decl., ¶¶ 2-4. The Class Representatives

16

understand their duties as class representatives, have provided information necessary for the prosecution of this case, and both indicated their intent to vigorously prosecute this action. *Id*.

> b.    Plaintiffs' attorneys are competent and qualified to represent the Class

In assessing counsel's adequacy to represent the class, courts look to the factors for appointing class counsel under Rule 23(g):

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g).

Walcheske & Luzi, LLC, lead Class Counsel, has extensive experience. Courts have found that Walcheske & Luzi is a firm recognized for being "experienced in complex [ERISA] litigation," and having the ability and resources to vigorously prosecute [an] action." *See Soulek*, Case No. 20-C-937, Dkt. 52 at 4. Walcheske & Luzi also has relevant knowledge to act as Class Counsel. The firm has litigated dozens of ERISA class action cases over the last six years and is one of the few firms in the country with the expertise and experience to do so. Secunda Decl., ¶¶ 14-29. Local counsel, Mr. Feigenbaum, have similar and extensive experience with successfully navigating ERISA class action litigation. *Id.*, ¶¶ 30-31.

**B.    The Proposed Class Satisfies Rule 23(b)(1)**

In addition to meeting the requirements of Rule 23(a), the proposed Class satisfies Rule 23(b)(1). Under Rule 23(b)(1), a class may be certified if prosecution of separate actions by individual class members would create a risk of:

> (A)    inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

      (B)    adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1). Rule 23(b)(1)(A) "considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members." *In re IKON Office Solutions*, 191 F.R.D. 457, 466 (E.D. Pa. 2000). In both instances, the court is concerned with the problems that would be caused if each potential class member were free to pursue his or her own lawsuit.

The Rule 23 Advisory Committee noted that "an action which charges a breach of trust …by [a] … fiduciary similarly affecting the members of a large class of … beneficiaries" calls for certification under this section. *See also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833-34 (1999)(citing same). Further, due to the "derivative nature" of claims brought under ERISA §502(a)(2) [29 U.S.C. §1132(a)(2)], "breach of fiduciary duty claims brought under §502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class[.]" *Schering*, 589 F.3d at 604 (citing cases).

This district has granted class certification under Rule 23(b)(1) in actions brought under 29 U.S.C. §1132(a)(2). *See, e.g., Hochstadt*, 708 F. Supp.2d at 105–06 (Rule 23(b)(1) was "clearly satisfied" given that the "ERISA §502(a)(2) claim brought on behalf of the Plan and alleging breaches of fiduciary duty on the part of Defendants that will, if true, be the same with respect to every class member"); *Tracey v. M.I.T.*, No. 16-11620, Doc. 157 at 17–18 (D. Mass. Oct. 19, 2018) (certifying a class in an ERISA action under Rule 23(b)(1)); *Weeks v. JetDirect Aviation, Inc.*, No. 09-10527, 2010 U.S. Dist. LEXIS 111037, at *16 (D. Mass. Oct. 19, 2010) (certified settlement class under Rule 23(b)(1)).

Plaintiffs further contend that the proposed Settlement Class can be certified under Rule 23(b)(1)(A) or (B) because "inconsistent or varying adjudications with respect to individual class members…would establish incompatible standards of conduct for the party opposing the class," or "adjudications with respect to individual class members…would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(A)–(B). The risk of establishing inconsistent standards is particularly strong where, as here, the central element of the prudence claims is not individualized: the fiduciary duties are owed to, and carried out for, the Plan.

Thus, a court adjudicating a suit by an individual plaintiff would determine the issues of the existence of the fiduciary duty and its breach not in relation to the individual plaintiff, but in relation to the entire plan because the fiduciaries' actions are taken as to the plan as a whole. As the Supreme Court stated: "Section 502(a)(2) provides for suits to enforce the liability-creating provisions of §409, concerning breaches of fiduciary duties that harm plans." *LaRue v. DeWolff, Boberg & Assoc., Inc.*, 552 U.S. 248, 251 (2008). Plaintiffs contend that this produces not only a significant risk, but a near certainty that separate actions would establish differing standards for the duty under ERISA owed by the fiduciaries to the Plan. The tremendous number of Plan participants only enhances the likelihood of separate actions producing inconsistent and incompatible results.

In all, the Court should certify the proposed class under Rule 23(b)(1).

## **CONCLUSION**

Plaintiffs respectfully request that the Court: (1) preliminarily approve the Parties' Class Action Settlement Agreement in the above-referenced matter; (2) approve the proposed Settlement Notice and authorize distribution of the Notice to the Settlement Class; (3) preliminarily certify

19

the Settlement Class for settlement purposes only; (4) schedule a final approval hearing; (5) approve the CAFA letter; (6) preliminarily approve the Plan of Allocation; and (7) enter the accompanying Preliminary Approval Order.

Dated this 13th day of February, 2026        Respectfully submitted,

**WALCHESKE & LUZI, LLC**

*s/ Paul M. Secunda*
Paul M. Secunda *(*admitted *pro hac vice)*
235 N. Executive Dr., Suite 240
Brookfield, Wisconsin 53005
Telephone: (262) 780-1953
Fax: (262) 565-6469
E-Mail: psecunda@walcheskeluzi.com

**JONATHAN M. FEIGENBAUM, ESQ.**

Jonathan M. Feigenbaum
184 High Street, Suite 503
Boston, MA 02110
Telephone: (617) 357-9700
E-Mail: jonathan@erisaattorneys.com

*Attorneys for Plaintiffs and Proposed
Settlement Class*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 13, 2026, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

<u>*s/Paul M. Secunda*</u>
Paul M. Secunda